Stephanie R. Tatar – State Bar No. 237792
**TATAR LAW FIRM, APC**
3500 West Olive Avenue, Suite 300
Burbank, California 91505
Telephone: (323) 744-1146
Facsimile: (888) 778-5695
Stephanie@thetatarlawfirm.com

Jeffrey B. Sand – (pro hac vice motion to be filed)
**THE WEINER LAW FIRM LLC**
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
Telephone: (404) 205-5029
Facsimile: (866) 800-1482
js@atlantaemployeelawyer.com

Attorneys for Plaintiffs
**CHARLES GLACKIN and NATHANIEL ROMAN**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHARLES GLACKIN and NATHANIEL ROMAN, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CHECKR, INC.**<br><br>**Defendant.** | **CIVIL ACTION NO. 3:17-CV-3691**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT AND THE INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT**<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.     Plaintiffs Charles Glackin and Nathaniel Roman, individually and on behalf of all others similarly situated, file this Class Action Complaint against Checkr, Inc. ("Checkr" or "Defendant").

2.     This is a consumer class action based on Checkr's violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C §§ 1681 *et seq., as amended* and the Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1786.1, *et seq.*

3.     Plaintiffs bring this action on behalf of themselves and thousands of employees and employment applicants throughout the country who have been the subject of unfair, prejudicial, misleading and illegal background reports performed by Checkr and sold to employers.

4.     Checkr has adopted and maintained a policy and practice of knowingly, intentionally, recklessly and willfully reporting outdated adverse public record information that is required to be excluded from the consumer reports that it sells.

5.     Checkr's inclusion of this information contravenes Congress's goal of excluding prejudicial information after the passage of time.  As noted by Senator Proxmire during the passage of the FCRA, "One of the common irrelevancies perpetuated by credit reporting agencies is furnishing information on minor offenses committed many years ago." 115 Cong. Rec. 2412 (1969) (Statement of bill sponsor Sen. Proxmire).  In passing Section 1681c, Congress wanted to allow consumers a fresh start after the passage of time, to ensure that negative events in a person's life do not have an unfairly prejudicial effect.  This is especially true where the negativity of the event overwhelms the fact that it is old.

6.     Another legislator explained that the FCRA's protections represented "new safeguards to protect the privacy of employees and job applicants;" the Act as a whole, he continued, was "an important step to restore employee privacy rights."  140 Cong. Rec. H9797-05 (1994) (Statement of Congressman Vento); *see also* 138 Cong. Rec. H9370-03 (1992) (Statement of Congressman Wylie) (stating that the FCRA "would limit the use of credit reports for employment purposes,

while providing current and prospective employees additional rights and privacy protections").

7.    Consumers' interest in not having old information disclosed is deeply rooted in privacy concerns.  According to the federal government, "Section 1681c's restrictions on disclosing older adverse information serve the governmental interest in protecting individuals' privacy."   Mem. of the U.S. in Supp. of the Constitutionality of § 1681c of the FCRA, *King v. Gen. Info. Servs., Inc.*, No. 2:10-cv-6850, ECF No. 52 at 10 (E.D. Pa. May 3, 2012).  The restriction of access to information, even information that is otherwise publicly available, has been recognized by the Supreme Court as implicating privacy concerns and as being grounded in common law.  *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989) (finding privacy right in not having a "rap sheet" consisting of a compilation of publicly available information).

8.    Numerous academics have also noted that the FCRA enshrines privacy by recognizing the link between protecting individual privacy and forbidding the disclosure of old information.  *See* Steven C. Bennett, The "Right to Be Forgotten": Reconciling EU and US Perspectives, 30 Berkeley J. Int'l L. 161, 167 (2012) (citing the FCRA's ban on reporting outdated information as an example of "'data minimization' (a form of the right to be forgotten)" which "has long been a central element of 'fair information practices'"); Meg Leta Ambrose, It's About Time: Privacy, Information Life Cycles, and the Right to Be Forgotten, 16 Stan. Tech. L. Rev. 369, 378–79 (2013) ("the Fair Credit Reporting Act generally disallows the use of information older than seven years that may cast the consumer in negative or unfavorable light...the hope is that the information no longer represents the individual and would limit her opportunities if it were attached to her name as she moves through life").

9.    By failing to provide Plaintiffs and others similarly situated with the

"fresh start" mandated by Congress, and by failing to respect the privacy of their information, Defendant did concrete harm to them and presented a portrait of them to prospective employers that was worse than it would have been had Defendant followed the law. This violation of law was a concrete harm. *Gambles v. Sterling Infosystems, Inc.*, 15-cv-9746, ECF No. 72 (S.D.N.Y. Feb. 13, 2017); *Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *5–6 (N.D. Cal. July 26, 2016) (plaintiff suffered concrete injury sufficient to sue under 15 U.S.C. § 1681c(a) and § 1681e(b) when defendant created background report including arrests of plaintiff more than seven years old, because defendant "published plaintiff's stale arrests . . .[and] thereby sent restricted information about plaintiff into the world and as such caused injury to plaintiff's privacy interest").

10.    Defendant's practice of reporting outdated adverse information violates a fundamental protection afforded to consumers under the FCRA and the ICRAA, is contrary to the unambiguous language of the statutes, and is counter to longstanding judicial and regulatory guidance. *See, e.g.,* FTC, *Forty Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations*, July 2011, at 55 ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection."); *Serrano v. Sterling Infosystems, Inc.*, 557 F. Supp. 2d 688 (C.D. Cal. 2008) (holding that the FCRA prohibits even *alluding* to existence of unreportable adverse information).

11.    The prejudice caused by Defendant's erroneous reporting of outdated adverse public record information is exacerbated by Defendant's failure to notify the consumer contemporaneously of the fact that the erroneous outdated information is being sent to an employer or prospective employer, and Defendant's failure to maintain strict procedures to insure that the adverse information it reports

is accurate, complete and up to date and that outdated adverse public record information is removed from its reports.

12.    As a result, consumers who are entitled to receive copies of their credit files from Defendant are deprived of full disclosure and unable to adequately verify and/or dispute the information that Defendant is selling to employers.

13.    Additionally, the FCRA and the ICRAA afford to consumers the critical right to dispute inaccurate, incomplete, or outdated information in their consumer reports.

14.    Following a consumer's dispute, CRAs are required to delete inaccurate, outdated, incomplete, or unverifiable information.

15.    One of the most destructive reporting abuses suffered by consumers occurs when consumer reporting agencies reinsert previously disputed and deleted information back into a consumer's reports.

16.    The problem with reinsertion was so pervasive that the Consumer Credit Reporting Reform Act of 1996 amended the FCRA to add specific provisions to prevent this abuse.  15 U.S.C. § 1681i(a)(5)(B), *as amended by* Pub. L. No. 104-208 § 2409 (1996).

17.    Likewise, the FACTA amendments of 2003 included additional protections for consumers related to the reinsertion of information.  15 U.S.C. § 1681s-2(b)(1)(E), *added by* Pub. L. No. 108-159 § 314(b) (2003); *see* Testimony of Even Hendricks before the House Committee on Financial Services Subcommittee on Financial Institutions & Consumer Credit, June 12, 2003 ("The 1996 Amendments aimed to address several problems, including chronic inaccuracy, non-responsiveness and inadequate reinvestigations by consumer reporting agencies (CRAs) and furnishers, the reinsertion of previously deleted data and the impermissible use of credit reports … The Unfortunate reality under the current system for many consumers who are victims of inaccurate credit reports and/or

identity theft is that they can only force CRAs and furnishers to truly reinvestigate and correct errors by filing a lawsuit.  I have seen cases in which consumers followed all the normal procedures to get errors corrected, only to find that inaccurate information was "verified" as report, or previously deleted information was reinserted.").

18.     To ensure consumers are protected from the harm of having previously disputed and deleted information reinserted into their reports and sold to third parties, the FCRA requires: (1) CRAs must adopt procedures to prevent the reappearance of material that is deleted pursuant to a consumer's dispute (15 U.S.C. § 1681i(a)(5)(c)); (2) for previously deleted information to be reinserted, the material must be certified by the furnisher as complete and accurate (15 U.S.C. § 1681i(a)(5)(B)(i); and (3) if material is reinserted, the CRA must notify the consumer not later than 5 business days after the reinsertion that the disputed information has been reinserted, the business name and address of the furnisher of the information, and a notice that the consumer has a right to add a statement in the consumer's file disputing the accuracy or completeness of the disputed information (15 U.S.C. § 1681i(a)(5)(B)(ii) and (iii)).

19.     Likewise, the ICRAA provides that no information may be reinserted into a consumer's file unless: (1) the furnisher of the information verifies that the information is complete and accurate; and (2) promptly provides the consumer with a written notice that the information has been reinserted, the name, address, and telephone number of the furnisher the information; and (3) a notice that the consumer has a right to a reinvestigation of the information reinserted and to add a statement to the consumer's file disputing the information.  Cal. Civ. Code § 1786.24(f).

20.     Defendant has adopted and maintained a policy and practice of knowingly, intentionally, recklessly and willfully reinserting previously disputed

and deleted information into consumers' reports without complying with the requirements of the FCRA or the ICRAA.

21. Defendant does not maintain procedures to prevent the reappearance of information previously deleted pursuant to a consumer's dispute. As a result, Defendant routinely reinserts inaccurate and obsolete information into consumers' reports, and renders futile consumers' efforts to remove inaccurate or obsolete information from the reports Defendant sells about them.

22. Prior to reinserting previously disputed and deleted information, Defendant does not obtain a certification from the furnisher of the information that it is complete and accurate.

23. After Defendant reinserts previously disputed and deleted information into a consumer's file, Defendant does not provide a notice to the consumers that includes a statement that the information has been reinserted. As a result, consumers are left to discover that the information they previously disputed as inaccurate was reinserted into their reports only after Defendant sells a consumer report about them to a third party.

24. After Defendant reinserts previously disputed and deleted information into a consumer's file, Defendant does not provide a notice to the consumers that discloses the name, address, and telephone number of the furnisher of the information. Thus, consumers are deprived of information they need to determine who is reporting the inaccurate information about them, and left without the ability to dispute the information directly with the furnisher of the information.

25. After Defendant reinserts previously disputed and deleted information into a consumer's file, Defendant does not provide a notice to the consumers that the consumer has a right to add a statement to the consumer's file disputing the accuracy or completeness of the information. As a result, consumers are left in the dark that they have a right to flag the reinserted information as disputed.

26.     Upon information and belief, Defendant lacks any procedures whatsoever for consumers to add a note to their files that information is disputed by the consumer.

27.     As a result of Defendant's failures to meet these requirements, consumers such as Plaintiffs face a Sisyphean nightmare of Defendant selling inaccurate and/or outdated information about them, disputing the information with Defendant, and having Defendant correct the erroneous and/or outdated information, only to discover Defendant reinserting the previously-deleted information in subsequent reports.  This results in concrete harm to consumers' privacy interests, including their interest in ensuring that information they previously disputed as inaccurate, and which Defendant previously deleted, is not reported to future employers.

28.     Additionally, Defendant's failure to comply with the notice requirements related to the reinsertion of previously disputed and deleted information causes concrete informational harm to consumers.  Defendant's failure to provide consumers with the required notices deprives them of information that Congress has deemed essential to allowing consumers to maintain reasonable control over their consumer reports.  Without the required notices, consumers are left to discover that Defendant has reinserted previously disputed and deleted information only after Defendant has sold a consumer report to a prospective or current employer; without the knowledge of who is the furnisher of such information; and without an understanding that they have a right to add a statement to their consumer reports that the reinserted information is disputed.

## JURISDICTION AND VENUE

29.     Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

30.     Venue is proper in this Court under 28 U.S.C. § 1391(b) as Defendant regularly conducts business in this district and division and a substantial part of the events that give rise to the claim occurred in this district and division.

## PARTIES

31.     Plaintiff Charles Glackin is an adult individual residing in Los Angeles, CA.

32.     Mr. Glackin is a natural person and a "consumer" as protected and governed by the FCRA and the ICRAA.

33.     Plaintiff Nathaniel Roman is an adult individual residing in Woodland Hills, CA.

34.     Mr. Roman is a natural person and a "consumer" as protected and governed by the FCRA and ICRAA.

35.     Defendant is a business entity that regularly conducts business in the Northern District of California, and has a principal place of business located at 2505 Mariposa Street, San Francisco, CA 94110.

36.     At all times relevant hereto, Defendant was a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f).

37.     At all times relevant hereto, Defendant was an investigative consumer reporting agency ("ICRA") as that term is defined by Cal. Civ. Code § 1786.2(d).

38.     For monetary fees, Defendant regularly engages in the practice of assembling information on consumers for the purpose of furnishing consumer reports to third parties.

39.     Defendant advertises itself on its website to current and prospective customers as "Compliant with state and federal laws, including FCRA" (https://checkr.com/, last visited April 24, 2017) and it "has built-in tools that make it easier to maintain compliance with the Fair Credit Reporting Act (FCRA) and state laws."  (https://checkr.com/product/compliance/, last visited April 24, 2017.)

40.     Defendant also advertises that it has the "fastest turnaround time in the industry." (https://checkr.com/product/, last visited April 24, 2017.)

## FACTUAL ALLEGATIONS

**A.     Checkr's Practices as a Consumer Reporting Agency and Furnisher of Consumer Information for Employment Purposes.**

**i.     Checkr Reports Antiquated Information.**

41.     Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer reports by CRAs, including public record information.

42.     Defendant investigates and reviews public record databases and maintains consumer files that contain public record information concerning, among other things, the alleged criminal record history of individuals.

43.     From its files, Defendant sells consumer reports to employers wishing to investigate the criminal record history, or lack thereof, with regard to job applicants or current employees.

44.     When a CRA furnishes a copy of a consumer's report to the consumer or a third party, the CRA is required to exclude adverse items of information, including non-conviction criminal records, which antedate the report by more than seven years. *See* 15 U.S.C. § 1681c(a)(5) and Cal. Civ. Code § 1786.18.

45.     Under the FCRA, adverse items of information, such as non-conviction criminal records, which antedate the consumer report by more than seven years, may be included in a consumer report, but only for consumer reports used in connection with the employment of any individual at an annual salary which equal, or which may be reasonably expected to equal $75,000 or more. *See* 15 U.S.C. § 1681c(b)(3).

46.     It is standard practice for consumer reporting agencies to write filters and algorithms "to filter out obsolete credit information." *See* www.naca.net/issues/credit-reporting-problems.

47.    It is also standard in the consumer reporting industry for consumer reporting agencies to have a purge date for information in their system that has become outdated.  *See Gillespie v. Trans Union Corp*., 482 F.3d 907, 908 (7th Cir. 2007).

48.    Despite these clear and unambiguous requirements of the FCRA, the ICRAA, and standard industry practices, Defendant regularly sells adverse items of information, including non-conviction criminal records, which antedate the consumer report by more than seven years, before it knows or would have any reason to know that the consumer credit report is being used in connection with the employment of an individual who meets the FCRA salary threshold requirement of an annual salary of $75,000 or more.

49.    Defendant's practice not only violates the FCRA and the ICRAA as a matter of law, it exacts serious consequences on consumer job applicants and interstate commerce.  When consumers have been reported as having criminal records that are required by law not to be reported, they are viewed as less desirable job applicants and more likely not to be hired or continue to be employed by the employers who pay Defendant for such reports.

50.    Despite its duties to refrain from reporting outdated adverse information, Defendant has nonetheless deliberately, willfully, intentionally, recklessly and negligently adopted a policy and practice that disregards this duty, in violation of the FCRA and the ICRAA.

51.    As a result of Defendant's conduct, job applicants, such as Plaintiffs, appear to be worse job candidates than they would be if Defendant only reported information it is allowed to report under the law.  Defendant's inclusion of this illegal information has therefore caused concrete injury in fact. *Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *5 (N.D. Cal. July 26, 2016); *Gambles v.*

*Sterling Infosystems, Inc.*, No. 15 CIV. 9746 (PAE), 2017 WL 589130 (S.D.N.Y. Feb. 13, 2017).

**ii.    Checkr Reinserts Previously Disputed and Deleted Information.**

52.    The FCRA and the ICRAA have strict requirements that Defendant must follow regarding information disputed by a consumer.

53.    If a consumer notifies Defendant that the consumer disputes the accuracy or completeness of any item of information in the consumer's file, Defendant must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, incomplete, outdated, or unverifiable, and record the current status of the disputed information, or delete the item from the file within 30 days of receiving the consumer's dispute.  15 U.S.C. § 1681i(a)(1)(A); Cal. Civ. Code § 1786.24.

54.    If Defendant deletes information as a result of a consumer's dispute, it must maintain reasonable procedures designed to prevent the reappearance of such information in a consumer's file.  15 U.S.C. § 1681i(a)(5)(C); Cal. Civ. Code § 1786.24(l).

55.    Defendant does not maintain reasonable procedures to prevent the reappearance in the file of a consumer information that has been deleted pursuant to a consumer dispute.

56.    Instead, Defendant routinely reinserts previously disputed and deleted information into consumers' reports.

57.    The FCRA and the ICRAA also prohibit Defendant from reinserting previously disputed and deleted information into a consumer's file unless Defendant obtains a certification from the furnisher of the information that such information is complete and up-to-date.   15 U.S.C. § 1681i(a)(5)(B)(i); Cal. Civ. Code § 1786.24(f).

58.    As a matter of practice and policy, Defendant does not obtain certifications from furnishers that previously disputed and deleted information is complete and up-to-date prior to reinserting such information in consumers' reports.

59.    The FCRA further mandates if Defendant reinserts information that was previously-disputed and deleted into a consumer's file, it shall notify the consumer within five business days after the reinsertion.   15 U.S.C. § 1681i(a)(5)(B)(ii).  The notice must include: (i) a statement that the disputed information has been reinserted; (ii) the business name, address, and telephone number of any furnisher of information contacted in connection with the reinsertion of such information; and (iii) a notice that the consumer has a right to add a statement to the consumer's file disputing the accuracy or completeness of the disputed information.  15 U.S.C. § 1681i(a)(5)(B)(iii)

60.    The ICRAA requires Defendant to provide a similar notice, including: (i) a statement that the disputed information has been reinserted; (ii) the name, address, and telephone number of any furnisher of information contacted in connection with the reinsertion; and (iii) a notice that the consumer has the right to a reinvestigation of the information reinserted by the investigative consumer reporting agency and to add a statement to his or her file disputing the accuracy or completeness of the information.  Cal. Civ. Code § 1786.24(f)

61.    Defendant does none of these things.  Instead, consumers are left to find out that Defendant has reinserted information, which the consumer has already disputed and which Defendant has already deleted, into their consumer files only after Defendant sells reports to their prospective or current employers.

62.    Based on a common policy and practice, Defendant regularly and unlawfully reinserts information into consumers' files without complying with any of the requirements set forth above.

63. Defendant's practice not only violates the FCRA and the ICRAA as a matter of law, it exacts serious consequences on consumer job applicants and interstate commerce. Consumers' efforts to have inaccurate or outdated information permanently removed from their consumer reports are thwarted. Instead, consumers are faced with Defendant continually selling inaccurate and outdated information about them, despite deleting such information in a prior dispute and reinvestigation. Defendant's practice also deprives consumers of critical information about the reinsertion of previously disputed and deleted information, including the required notice that Defendant reinserted the into their files and that consumers have a right to flag such information as disputed. This leads to consumers being deprived of critical information that they are entitled to under both the FCRA and the ICRAA. It also leads to consumers being viewed as less desirable job applicants and more likely not to be hired or continued to be employed by the employers who pay Defendant for background reports.

**B.    The Experience of Plaintiff Charles Glackin**

64. In 2016, Mr. Glackin began working for Uber as a driver in California.

65. At around the time that Mr. Glackin began working for Uber, Uber purchased a consumer report on Mr. Glackin from Defendant.

66. The consumer report furnished by Defendant did not contain any criminal record information about Mr. Glackin.

67. For many months, Mr. Glackin worked for Uber and had significant success as a driver.

68. As part of its annual background check process, Uber purchased another consumer report on Mr. Glackin from Defendant in March 2017.

69. The report was a consumer report as defined by the FCRA and the ICRAA.

70.     On March 23, 2017, Mr. Glackin received an email from Defendant about his employment.  The email stated, "[t]he specific records that may disqualify you from an entering an independent contractor relationship with the Company are: CHARGE:   BAD   CHECKS   (STATUTE:   18-4105-A1)   (DISPOSITION: FUGITIVE)."

71.     Mr. Glackin reviewed the consumer report that was attached to the email and was taken aback by what he saw.

72.     According to Defendant's consumer report, Mr. Glackin had an "Open Warrant" from York County, Pennsylvania with a file date of July 5, 2001.

73.     Defendant's consumer report did not identify a specific charge, a disposition, or a disposition date for the charge, despite that it identified a specific charge and disposition in its March 23, 2017 email.

74.     This adverse criminal record information was incorrect.

75.     Mr. Glackin did not have an "Open Warrant."

76.     Nor should Defendant have reported this adverse criminal record information since it antedated the consumer report by more than seven years.

77.     At about the time that Mr. Glackin received the email, Uber deactivated his account and Mr. Glackin was denied the ability to drive, earn a living, and pay his bills.

78.     On March 24, 2017, Mr. Glackin initiated a dispute with Defendant with respect to the criminal record information that Defendant reported about him.

79.     On March 27, 2017, Mr. Glackin received an email from Defendant in which Defendant thanked him for bringing his dispute to its attention and requested any documentation he had concerning the dispute.

80.     On March 28, 2017, Mr. Glackin emailed Uber:

> I want to know why I'm blocked out of my account. I contacted "checker" about my background check and they won't respond to me. Can you give me a direct number?

How long will I be blocked from my account? This is a false accusation from 2001. Checker [sic] has cleared me on 5 occasions in the past 5 years. The FBI has cleared me to work security and to possess a guard card. I never wrote a bad check in my life. I want them to provide proof. This is costing me a lot of money.

81. Later that same day, Uber responded to Mr. Glackin:
We understand your eagerness to get back on the road as soon as possible and we're sorry to hear that you have not heard back yet, Charles. In some cases, this process can take up to 15 days for this step to complete due to unforeseen delays. We appreciate your patience and you will receive an email with more information as soon as it is available. We hope for your understanding. Can you confirm to us that you've already navigated to this link here to check your background check status?

82. Mr. Glackin wrote back to Uber:
Yes I went to that link and it says there is an open warrant from 2001. I have three concerns here. First, I never heard of this warrant before. I have never committed a crime. Secondly, this is from 2001, 16 years ago, so even if I did write a bad check. How is this relevant now? My third concern is Checkr [sic] has cleared me at least 5 times in the past 5 years. They cleared me for security work to obtain a California Guard Guard, as well as the FBI. Why is this the first time we are hearing about this? I'm going to talk to a lawyer tomorrow because their company is costing me a lot of money. There is absolutely no reason to block me from the Uber app.

83. Uber responded to Mr. Glackin the same day:
Thank you for your email. If you feel as though the information contained within the background check report you received was either inaccurate or incomplete (i.e. you did not commit the violation(s) listed or the individual named on the background check is not you), you will need to go to the Checkr Applicant Portal to have any necessary

changes made, including information regarding what's incorrect, how it's incorrect, and/or supporting evidence/documentation to dispute the inaccuracy of the background check report you received.

84.     On March 31, 2017, Mr. Glackin again emailed Uber:
How much longer are you going to block me from the platform? This incident never happened. And even if it did happen it would have been 16 years ago. Why did checker [sic] clear me 5 times in the past 5 years? Three times for my guard card and twice for Lucy and Uber. Now suddenly there is an incident that supposedly happened in 2001. Checker won't even respond to me. This is completely uncalled for.

85.     Later that day, Mr. Glackin received an email from Defendant in which Defendant stated that it was not going to correct the consumer report.  Defendant stated:
Thank you for your email dated 2017-03-24, disputing the following records on your consumer report:

OPEN WARRANT

We have contacted the furnisher of the information and have completed our reinvestigation of the disputed information. We have determined that the information originally reported is accurate and complete.

86.     Defendant attached a copy of Mr. Glackin's consumer report to the email, and the report still contained the same adverse criminal record information.

87.     Additionally, like its first consumer report on Mr. Glackin, this consumer report did not identify a specific charge, a disposition or a disposition date for the charge, despite that Defendant identified a specific charge and disposition in its email.

88.    Defendant's email also informed Mr. Glackin that Defendant had "forwarded a copy of the report to the Employer or Contractee who requested your report."

89.    The same day, Mr. Glackin received a second email from Defendant.

90.    The second email contained yet another version of Mr. Glackin's consumer report and told him that "Checkr will have no further updates available for you, as your background check is now complete."

91.    At long last, and in contrast to the reports Defendant already had sent to Mr. Glackin, this version of Mr. Glackin's consumer report no longer contained the "Open Warrant" charge.

92.    Instead, the consumer report contained no criminal record information whatsoever.

93.    Later that same day, Uber reactivated Mr. Glackin's account and emailed him:

> Sorry for the inconvenience this has caused you, Charles. Your account is eligible for reactivation. I have gone ahead and reactivated your account. I suggest trying to log out and logging back in to refresh your account.
>
> You are a wonderful partner and an asset to the Uber team. If there is anything else I can help you with, please do not hesitate to reach out and I will be more than happy to lend a hand. You can also visit our **help page** for useful information. Have a great day!

94.    Mr. Glackin was relieved that the situation had been cleared up.  He returned to work with Uber and resumed driving.

95.    But Mr. Glackin's relief was short-lived.

96.    On April 5, 2017, Defendant sent Mr. Glackin another email concerning his consumer report.

97.    The email contained yet another consumer report and stated:

Please carefully review the consumer report. We will be completing our review of your proposal to enter an independent contractor relationship request within the next few days and, based in whole or in part on the information in the report, may decide not to accept your proposal. The specific records that may disqualify you from an entering an independent contractor relationship with the Company are:

- CHARGE: BAD CHECKS (STATUTE: 18-4105-A1) (DISPOSITION: FUGITIVE)

98. When Mr. Glackin reviewed the new consumer report, he discovered that Defendant had reinserted the previously-deleted "Open Warrant" charge with a "File Date" of "Jul 5, 2001."

99. Defendant did not provide Mr. Glackin with a written notice that the disputed and deleted information had been reinserted into his file.

100. Defendant did not provide Mr. Glackin with a written statement that included the business name and address of the furnisher of the reinserted information.

101. Defendant did not provide Mr. Glackin with a written notice that he had a right to add a statement to his consumer file disputing the accuracy or completeness of the disputed information that had been reinserted.

102. Prior to reinserting the disputed information into Mr. Glackin's file, Defendant did not obtain a certification from the furnisher of the information that it was compete and accurate.

103. Mr. Glackin was stunned. He had spent weeks trying to get Defendant's consumer report cleared up and thought he was successful, only to discover that Defendant was going to make him run the gauntlet again.

104. On April 5, 2017, Mr. Glackin emailed Uber:
Seriously? We just fixed this. I was off the platform for over a week because of Checkers [sic] mistake. I proved

to you they were wrong. I sent you evidence. Then you cleared me and everything was good. I've been driving for 3 days and now you block me again claiming the same thing again. Are you really that disorganized? Lyft is starting to look like a better option.

105.   Later that same day, Uber emailed Mr. Glackin:
Thank you for reaching out.

I understand that you have been waiting a while for a decision at this point, and we will be investigating your individual background check report over the next 4 business days.

Please keep an eye out in your inbox for a response from the Uber team regarding any next steps available or updates to your account status. We sincerely thank you for your patience throughout this process.

106.   Mr. Glackin responded: "You already cleared me. Now today you start completely over. This is rediculous [sic]. I've been working for the last 3 days. Read the reports. Do your job." He also wrote: "I have sent you proof already that checker [sic] has cleared me. Please read the history."

107.   Uber responded to Mr. Glackin:
I truly understand your frustration about this matter since your background check was recently cleared, Charles. Though this is something that Uber has no control, no worries, we already submitted a report and we will be investigating your individual background check report over the next 4 business days.

Your patience and understanding about this matter is highly appreciated.

108.   On April 7, 2017, Mr. Glackin followed up again with Uber:
I delivered evidence produced by Checker [sic] background checks yesterday to the green light hub in San Francisco. Can you tell me how long you will keep me

from working this time? We went through this exact same thing a week ago with Uber and was cleared. What happened this time? Checker [sic] tells me they have cleared me and have nothing to do with this.

109.  Later on April 7, 2017, Uber emailed Mr. Glackin:
Thanks for reaching out. It appears that your background check provider has completed their report, but it is currently in review by Rasier. Please hang tight and we'll reach out when it's finished - typically, within 7 business days but it can take up to 15 days in some cases.

110.  A few minutes later, Mr. Glackin again tried to tell Uber that he had already been cleared by Defendant: "Yes but you already cleared me. I already waited 2 weeks. This is ridiculous. Please put yourself in my shoes. You cost me a month of work."

111.  Rather than acknowledging the runaround and correcting the issue once and for all, Uber sent Mr. Glackin another mechanical email:
Thanks for the follow up and I am sorry to hear you have not heard back yet. In some cases, it can take up to 15 days for this step to complete. We appreciate your patience and you will receive an email with more information as soon as it is available.

I am sorry for any inconvenience caused.

112.  On April 8, 2017, Mr. Glackin checked in with Uber yet again:
Any word on my account getting reactivated? I can send you proof that checker [sic] has cleared me already. I can also send you proof that you cleared me already but a week later forgot and restarted this whole process again.

113.  Much like its previous responses, Uber responded to Mr. Glackin and continued to give him the runaround:
From time to time, we are required by law to perform an updated background check on driver-partners in order for us to keep your account active.

It appears that your background check provider has completed their report, but it is currently in review by Rasier. Please hang tight and we'll reach out when it's finished - typically, within 7 business days but it can take up to 15 days in some cases.

If you have any questions or concerns about the contents of the background check report you have received, your best resource for answers will be the guidelines provided in the email. If you have not received this message, then you can go here to check your status with Checkr.

114.   Less than an hour later, Mr. Glackin responded to Uber:
I'm sorry but your [sic] missing my point. You ran this background check two weeks ago and then approved me after kicking me off the platform. Checker [sic] cleared me. Trust me I know. I spent 8 days on the phone getting this resolved. So than I'm back up and running with Uber and 2 days later you ran another background check? No. You didn't. You just forgot you already put me through this. Read the records, look at the report. This is ridiculous that you are this unorganized. I will reach your bosses and let them know how unfairly you are treating me.

115.   Mr. Glackin wrote a second email to Uber that same day:
Your [sic] telling me that you ran a back ground check on me two weeks ago. Then checker [sic] cleared me. You invited me back to the app. I drive for two days and then you ran another background check and suddenly the exact same thing that I spent two weeks fixing is back on my record? I think you are just that unorganized that you don't know what your [sic] doing. I will reach your supervisors about this.

116.   Again, Uber responded to Mr. Glackin with a scripted email:
Thanks for writing back, Charles. So sorry to hear about the trouble here.

Thanks for the follow up and I am sorry to hear you have not heard back yet. In some cases, it can take up to 15 days

for this step to complete. We appreciate your patience and you will receive an email with more information as soon as it is available.

117.   On April 11, 2017, Mr. Glackin, aggravated to no end and having received no resolution, emailed Uber:

I went in Monday to the Green light hub and I was told I would be reactivated that day. Can you tell me what is happening? Please review my history I've been deactivated for over 3 weeks now. I did nothing wrong. Checker [sic] made a mistake. Could you please help me. My bills are adding up. This is very frustrating. I've been with Uber for over a year.

118.   Uber responded with yet another boilerplate email on April 12, 2017:

I checked your account and your background check provider has completed their report, but it is still currently in review by Rasier. Please hang tight and we'll reach out when it's finished - typically, within 7 business days but it can take up to 15 days in some cases.

If you have any questions or concerns about the contents of the background check report you have received, your best resource for answers will be the guidelines provided in the email. If you have not received this message, then you can go here to check your status with Checkr.

Did you receive your result from Checkr that you're cleared? If yes, can you send us a screenshot of the email? So sorry for the inconvenience.

119.   Finally, that same day, Uber acted on Defendant's new consumer report and denied Mr. Glackin.  It emailed:

We are writing to inform you that we are declining your request for an engagement. Checkr, Inc., a consumer reporting agency, provided the Company with a consumer report in connection with your proposal to enter an independent contractor relationship. The Company's decision to deny your proposal was based in whole or in

part on information contained in that consumer report and an individualized assessment of any additional information that you provided us.

The Company considered these specific items when declining your request for an engagement:

    ○    CHARGE: BAD CHECKS (STATUTE: 18-4105-A1) (DISPOSITION: FUGITIVE)

120.   The inaccurate information grossly disparaged Mr. Glackin.

121.   The inaccurate information consisted of incorrect statements which misrepresented his criminal history.

122.   As of result of Defendant's conduct, Mr. Glackin has suffered actual damages in the form of lost employment opportunities, harm to reputation, and emotional distress, including frustration, stress, humiliation and embarrassment.

123.   At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

124.   Defendant's practices and procedures described herein affected not only Mr. Glackin, but also other consumers who had outdated adverse information that was deliberately, knowingly, and recklessly reported by Defendant to prospective and current employers.  By way of example, and not limitation, the FCRA's limitation of reporting adverse arrest record information for not more than seven years, *see* 15 U.S.C. § 1681c(a)(5), requires that a CRA report the actual and correct date of arrest. Such date starts the statutory purge time period. By failing to maintain strict procedures to insure reporting of complete and up to date public record information, Defendant's practices directly conflict with the purposes of the FCRA and result in harm to consumers.

125.   Likewise, Defendant's practices and procedures described herein with respect to reinserted information affected not only Mr. Glackin, but also other consumers who had information that was disputed and deleted from their consumer files reinserted and provided to current or prospective employers.

126.   At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal and state law and the rights of the Mr. Glackin herein.

**C. The Experience of Plaintiff Nathaniel Roman.**

127.   In December 2016, Mr. Roman applied for a position as a driver with Uber.

128.   Shortly after Mr. Roman applied for the position, Uber purchased a consumer report on him from Defendant.

129.   On or about December 6, 2016, Defendant furnished its consumer report on Mr. Roman to Uber.

130.   On December 6, 2016, Uber emailed Mr. Roman a copy of Defendant's consumer report.  Uber also told Mr. Roman in the email that:

> We will be completing our review of your proposal to enter an independent contractor relationship request within the next few days and, based in whole or in part on the information in the report, may decide not to accept your proposal. The specific records that may disqualify you from an entering an independent contractor relationship with the Company are:
>
> CHARGE: PC 459 BURGLARY INHABITED
> DWELLING (DISPOSITION: CONVICTED)

131.    When Mr. Roman viewed the consumer report, he saw that Defendant had reported that he had a felony conviction for "Burglary Inhabited Dwelling" with an offense date of "Mar 7, 2010," a disposition date of "Jul 13, 2010," and a sentence of:

> Jail Time: 210 Day(s)210 Day(s) - Credit for Time Served: 210 Day(s)210 Day(s) - Restitution: 200.00200.00 - Sentencing notes: PC 12022.1(B) filed as to Count 2 Special Allegation 1 08/10/10 SENTENCING Participate as directed in any treatment program designated by the probation officer ADDITIONAL FEES ORDERED You are directed to pay victim restitution payable to Kelly Deardorf You are directed to pay victim restitution payable to Richard Morales You shall immediately seek out and obtain Pycho [sic] therapy counseling / therapy Take medication as directed You shall not use or possess any checks, identification cards, credit cards, credit card receipts, credit card numbers, debit cards, access cards, Social Security cards, mail or make application for any of the above, in any other name but your own. You shall not own, possess, have under custody or control or immediate access to any firearm, ammunition, oleocapsicum pepper spray, or tear gas PC 12022.1(B) filed as to Count 2 Special Allegation 1 08/10/10 SENTENCING Participate as directed in any treatment program designated by the probation officer ADDITIONAL FEES ORDERED You are directed to pay victim restitution payable to Kelly Deardorf You are directed to pay victim restitution payable to Richard Morales You shall immediately seek out and obtain Pycho [sic] therapy counseling / therapy Take medication as directed You shall not use or possess any checks, identification cards, credit cards, credit card receipts, credit card numbers, debit cards, access cards, Social Security cards, mail or make application for any of the above, in any other name but your own. You shall not own, possess, have under custody or control or immediate access to any firearm, ammunition, oleocapsicum pepper spray, or tear gas - Comments: 11/16/11; Receipt of Transfer from San Diego is received and filed. New case number is SCD237544. 11/08/11; Case is ordered transferred to San Diego County Note: Search complete. 1 of the 2 original possible

records were eliminated upon further research. You should now have 1 Record Reports in your possession.11/16/11; Receipt of Transfer from San Diego is received and filed. New case number is SCD237544. 11/08/11; Case is ordered transferred to San Diego County Note: Search complete. 1 of the 2 original possible records were eliminated upon further research. You should now have 1 Record Reports in your possession.

132. The adverse criminal record information that Defendant reported was incorrect and not up-to-date.

133. On May 28, 2014, the Superior Court of San Diego County granted Mr. Roman's Petition for Dismissal and stated:

Defendant's previously entered plea of guilty or nolo contender is hereby withdraw and a plea of not guilty entered; or, if defendant was convicted after a plea of not guilty, the verdict is hereby set aside.  The accusation or information against the defendant is dismissed and the defendant is released from all penalties and disabilities resulting from the offense of which he or she had been convicted.

134. In an attempt to clear up Defendant's error, Mr. Roman called Defendant to dispute the information in the consumer report.  In doing so, Mr. Roman provided Defendant with the court record applicable to the conviction.

135. On or about December 19, 2016, Defendant furnished an amended consumer report to Uber and to Mr. Roman.

136. This version of Defendant's consumer report no longer contained any adverse criminal record information relating to the previously-reported felony conviction.

137. After Defendant provided the amended consumer report to Uber, Uber approved Mr. Roman's application and Mr. Roman began driving for Uber.

138. During that time – specifically on January 18, 2017 – Defendant sold yet another consumer report on Mr. Roman to Uber.

139.    Again, this version of Defendant's consumer report did not contain any adverse criminal record information relating to the previously-reported felony conviction.   In the email to which it attached Mr. Roman's consumer report, Defendant told Mr. Roman that, "Checkr will have no further updates available to you, as your background check is now complete."

140.    With the background check issue seemingly behind him, Mr. Roman successfully drove for Uber and earned a living for nearly four months.

141.    But on April 21, 2017, Uber emailed Mr. Roman yet another consumer report from Defendant and deactivated him based on the report, denying him the ability to drive and to continue to earn a living.

142.    Defendant's April 21, 2017 email informed Mr. Roman that:

> We will be completing our review of your proposal to enter an independent contractor relationship request within the next few days and, based in whole or in part on the information in the report, may decide not to accept your proposal. The specific records that may disqualify you from an entering an independent contractor relationship with the Company are:
>
> CHARGE: FIRST DEGREE RESIDENTIAL BURGLARY (DISPOSITION: GUILTY)

143.    Defendant had reinserted the previously-deleted felony conviction information in its new consumer report.

144.    Specifically, Defendant had reported that Mr. Roman had a felony conviction for "First Degree Residential Burglary" with an offense date of "Mar 7, 2010" and a disposition date of "Aug 10, 2010."

145.    Defendant did not provide Mr. Roman with a written notice that the disputed information had been reinserted into his file.

146.   Defendant did not provide Mr. Roman with a written statement that included the business name and address of the furnisher of the reinserted information.

147.   Defendant did not provide Mr. Roman with a written notice that he had a right to add a statement to his consumer file disputing the accuracy or completeness of the disputed information that had been reinserted.

148.   Prior to reinserting the disputed information into Mr. Roman's file, Defendant did not obtain a certification from the furnisher of the information that it was compete and accurate.

149.   Mr. Roman was incredulous as he had already cleared up the situation once with Defendant and Defendant had since issued two corrected consumer reports.

150.   The inaccurate information grossly disparaged Mr. Roman. The inaccurate information consisted of incorrect statements which misrepresented his criminal history.

151.   The April 21, 2017 report also included non-conviction criminal record information that antedated the report by more than seven years and should not have been included in the report.

152.   As a result of Defendant's conduct, Mr. Roman has suffered actual damages in the form of lost employment opportunities, harm to reputation, and emotional distress, including frustration, stress, humiliation and embarrassment.

153.   At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

154.   Defendant's practices and procedures described herein affected not only Mr. Roman, but also other consumers who had outdated adverse information

that was deliberately, knowingly, and recklessly reported by Defendant to prospective and current employers.  By way of example, and not limitation, the FCRA's limitation of reporting adverse arrest record information for not more than seven years, *see* 15 U.S.C. § 1681c(a)(5), requires that a CRA report the actual and correct date of arrest. Such date starts the statutory purge time period. By failing to maintain strict procedures to insure reporting of complete and up to date public record information, Defendant's practices directly conflict with the purposes of the FCRA and result in harm to consumers.

155.   Likewise, Defendant's practices and procedures described herein with respect to reinserted information affected not only Mr. Roman, but also other consumers who had information that was disputed and deleted from their consumer files reinserted and provided to current or prospective employers.

156.   At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal and state law and the rights of the Plaintiff herein.

## CLASS ACTION ALLEGATIONS

157.   Plaintiffs bring the following nationwide class actions pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following classes for Defendant's violations of the FCRA:

> a.  All natural persons residing in the United States of America and its territories who, beginning five years prior to the filing of this Complaint and continuing through the resolution of this action, were the subject of any consumer report prepared by Defendant that included any non-conviction criminal record that antedated the report by more than seven years.

> b.  All natural persons residing in the United States of America and its territories who, beginning five years prior to the filing of this

Complaint and continuing through the resolution of this action, were the subject of any consumer report prepared by Defendant that included information reinserted into the consumer's report that Defendant had previously deleted as a result of the consumer's dispute.

158.   Numerosity: The Classes are so numerous that joinder of all class members is impracticable. Defendant produces reports nationwide, including in California, and has produced many thousands of reports on consumers during the class period, many of whom are members of the Classes.

159.   Typicality: Plaintiffs' claims are typical of the class members' claims. Defendant treated Plaintiffs in the same manner as other class members.

160.   Adequacy: Plaintiffs will fairly and adequately protect the interests of the Classes, and have retained counsel experienced in complex class action litigation.

161.   Commonality: Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes.  These common questions include:

    a.   Whether Defendant violated the law by reporting outdated criminal record information;

    b.   Whether Defendant violated the law by reinserting previously-deleted information into its consumer reports;

    c.   Whether Defendant's violations were willful;

    d.   Whether Defendant is a consumer reporting agency and subject to the requirements of the FCRA;

    e.   The proper measure of statutory and punitive damages; and

    f.   The proper form of declaratory relief.

162.   Ascertainability: The Classes can be identified.  Upon information and belief, Defendant maintains copies of consumer reports for at least five years after

they are provided to end-users.  The reports are maintained in text which can be electronically and/or manually searched to identify (1) charges which pre-date the date of the report by more than seven years and (2) criminal record information which was deleted from one report, but reinserted in a subsequent report.

## FIRST CLAIM FOR RELIEF

### (15 U.S.C. § 1681c:  Class Claim)

163.   Plaintiffs reallege Paragraph Nos. 1-162 as if fully set forth herein.

164.   The FCRA prohibits reporting obsolete adverse information, other than records of convictions of crimes, that antedates the consumer report by more than seven years.  Such adverse information may include records of arrest, criminal complaints, warrants, indictments, parole information, probation information, civil suits, civil judgments, paid tax liens, and accounts placed for collection.  15 U.S.C. § 1681c(a).

165.   Defendant violated Section 1681c of the FCRA by failing to exclude from its consumer reports adverse items of information that antedate the consumer reports by more than seven years, and are not records of criminal convictions.

166.   Defendant knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

167.   Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

168.   Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs and other similarly-situated individuals of their rights under the FCRA.

**SECOND CLAIM FOR RELIEF**

**(15 U.S.C. § 1681e(a):  Class Claim)**

169.    Plaintiffs reallege Paragraph Nos. 1-162 as if fully set forth herein.

170.    The FCRA requires CRAs to "maintain reasonable procedures designed to avoid violations of section 1681c." 15 U.S.C. § 1681e(a).

171.    Defendant willfully violated Section 1681e(a) of the FCRA by failing to maintain reasonable procedures to avoid violating Section 1681c.  Indeed, Defendant's procedures failed to exclude adverse items of information from its consumer reports that antedate the consumer report by more than seven years, and are not records of criminal convictions.

172.    Defendant knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

173.    Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

174.    Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs and other similarly-situated individuals of their rights under the FCRA.

**THIRD CLAIM FOR RELIEF**

**(15 U.S.C. § 1681e(b): Individual Claims)**

175.    Plaintiffs reallege Paragraph Nos. 1-162 as if fully set forth herein.

176.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report furnished regarding Plaintiffs.

177.   Defendant reported information about Plaintiffs that it had reason to know was inaccurate.

178.   Defendant knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

179.   Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

180.   Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs of their rights under the FCRA.

181.   Defendant's violation of 15 U.S.C. § 1681e(b) was willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

182.   As a result of this conduct by Defendant, Plaintiffs suffered actual damages including without limitation, by example only and as described herein on their behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## FOURTH CLAIM FOR RELIEF

### (15 U.S.C. § 1681k:  Individual Claims)

183.   Plaintiffs reallege Paragraph Nos. 1-162 as if fully set forth herein.

184.   Section 1681k of the FCRA requires that when a consumer reporting agency supplies public record information to a user for employment purposes, and such information is likely to have an adverse effect on employment, the CRA must:

(1)  at the time such public record information is reported to the

user of such consumer report, notify the consumer of the fact that

public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

(2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

185.   Defendant violated 15 U.S.C. § 1681k by failing to notify Plaintiffs that it was reporting public record information about them at the time it furnished such information to Uber, and by failing to maintain strict procedures to ensure that the public record information it was reporting was complete and up to date.

186.   Defendant knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

187.   Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

188.   Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs of their rights under the FCRA.

189.   Defendant's violation of 15 U.S.C. § 1681k was willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

190.   As a result of this conduct by Defendant, Plaintiffs suffered actual damages including without limitation, by example only and as described herein on their behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## FIFTH CLAIM FOR RELIEF

### (15 U.S.C. § 1681i:  Class Claim)

191.   Plaintiffs realleges Paragraph Nos. 1-162 as if fully set forth herein.

192.   Defendant violated 15 U.S.C. § 1681i by failing to (1) "conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."

193.   Defendant also violated 15 U.S.C. § 1681i(a)(5)(B) by failing to provide Plaintiffs and other similarly-situated individuals with a "(I) a statement that the disputed information has been reinserted; (II) the business name and address of any furnisher of information contacted and the telephone number of such furnisher, if reasonably available, or of any furnisher of information that contacted the consumer reporting agency, in connection with the reinsertion of such information; and (III) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the disputed information."

194.   Defendant further violated 15 U.S.C. § 1681i(a)(5)(C) by failing to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted in accordance with subparagraph (B)(i))."

195.   Defendant knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

196.   Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

197.   Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs and other similarly-situated individuals of their rights under the FCRA.

## SIXTH CLAIM FOR RELIEF

### (Cal. Civ. Code § 1786.18: Individual Claims)

198.   Plaintiffs reallege Paragraph Nos. 1-162 as if fully set forth herein.

199.   Defendant is an "investigative consumer reporting agency" as defined by Cal. Civ. Code § 1786.2(d).

200.   Plaintiffs are "consumers" as that term is defined by Cal. Civ. Code § 1786.2(b).

201.   The above-mentioned consumer reports were "investigative consumer reports" as that term is defined by Cal. Civ. Code § 1786.2(c) and were provided to employers for employment purposes, as that term is defined by Cal. Civ. Code §1786.2(f).

202.   The ICRAA prohibits reporting obsolete adverse information, that antedates the consumer report by more than seven years.  Such adverse information includes records of arrest, indictments, misdemeanor complaint or convictions of a crime that, from the date of disposition, release, or parole, civil suits, civil judgments, paid tax liens, and accounts placed for collection.  Cal. Civ. Code § 1786.18.

203.   Defendant violated Section 1786.18 of the ICRAA by failing to exclude from its consumer reports adverse items of information that antedate the consumer reports by more than seven years.

204.   Defendant knew or should have known about its obligations under the ICRAA.  These obligations are well established in the plain language of the ICRAA and in well-established case law.

205.   Defendant obtained or had available substantial written materials that apprised it of its duties under the ICRAA.

206.   Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs of their rights under the ICRAA.

207.   Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs of their rights under the ICRAA.

208.   Defendant's violation of Cal. Civ. Code § 1786.20 was negligent, grossly negligent, and/or willful, entitling Plaintiffs to recover under Cal. Civ. Code § 1786.50.

209.   As a result of this conduct by Defendant, Plaintiffs suffered actual damages including without limitation, by example only and as described herein on their behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

### SEVENTH CLAIM FOR RELIEF

### (Cal. Civ. Code 1786.20:  Individual Claims)

210.   Plaintiffs reallege Paragraph Nos. 1-162 as if fully set forth herein.

211.   Defendant is an "investigative consumer reporting agency" as defined by Cal. Civ. Code § 1786.2(d).

212.   Plaintiffs are "consumers" as that term is defined by Cal. Civ. Code § 1786.2(b).

213.   The above-mentioned consumer reports were "investigative consumer reports" as that term is defined by Cal. Civ. Code § 1786.2(c) and were provided to

potential employers for employment purposes, as that term is defined by Cal. Civ. Code. §1786.2(f).

214.   Defendant reported information about Plaintiffs that it had reason to know was inaccurate.

215.   Defendant knew or should have known about its obligations under the ICRAA.  These obligations are well established in the plain language of the ICRAA and in well-established case law.

216.   Defendant obtained or had available substantial written materials that apprised it of its duties under the ICRAA.

217.  Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs of their rights under the ICRAA.

218.   Defendant's violation of Cal. Civ. Code § 1786.20 was negligent, grossly negligent, and/or willful, entitling Plaintiffs to recover under Cal. Civ. Code § 1786.50.

219.   As a result of this conduct by Defendant, Plaintiffs suffered actual damages including without limitation, by example only and as described herein on their behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

### EIGHTH CLAIM FOR RELIEF

### (Cal. Civ. Code 1786.28: Individual Claims)

220.   Plaintiffs reallege Paragraph Nos. 1-162 as if fully set forth herein.

221.   Defendant is an "investigative consumer reporting agency" as defined by Cal. Civ. Code § 1786.2(d).

222.   Plaintiffs are "consumers" as that term is defined by Cal. Civ. Code § 1786.2(b).

223.   The above-mentioned consumer reports were "investigative consumer reports" as that term is defined by Cal. Civ. Code § 1786.2(c) and were provided to potential employers for employment purposes, as that term is defined by Cal. Civ. Code. §1786.2(f).

224.   Defendant reported public record information regarding criminal records about Plaintiffs that it had reason to know would have an adverse effect on Plaintiffs' ability to obtain employment.

225.   Defendant failed to maintain strict procedures to insure that the public record information was complete and up to date.

226.   Defendant knew or should have known about its obligations under the ICRAA.  These obligations are well established in the plain language of the ICRAA and in well-established case law.

227.   Defendant obtained or had available substantial written materials that apprised it of its duties under the ICRAA.

228.   Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs of their rights under the ICRAA.

229.   Defendant's violation of Cal. Civ. Code § 1786.20 was negligent,, grossly negligent, and/or willful, entitling Plaintiffs to recover under Cal. Civ. Code § 1786.50.

230.   As a result of this conduct by Defendant, Plaintiffs suffered actual damages including without limitation, by example only and as described herein on their behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

### NINTH CLAIM FOR RELIEF

### (Cal. Civ. Code 1786.24: Individual Claims)

231.   Plaintiffs reallege Paragraph Nos. 1-162 as if fully set forth herein.

232.   Defendant is an "investigative consumer reporting agency" as defined by Cal. Civ. Code § 1786.2(d).

233.   Plaintiffs are "consumers" as that term is defined by Cal. Civ. Code § 1786.2(b).

234.   The above-mentioned consumer reports were "investigative consumer reports" as that term is defined by Cal. Civ. Code § 1786.2(c) and were provided to potential employers for employment purposes, as that term is defined by Cal. Civ. Code. §1786.2(f).

235.   Defendant reinserted previously disputed and deleted information into Plaintiffs' consumer reports.

236.   Defendants did not maintain reasonable procedures designed to prevent the reappearance in Plaintiffs' files information that had been previously deleted pursuant to Plaintiffs' disputes.

237.   Prior to reinserting the previously disputed and deleted information into Plaintiffs' files, Defendant did not verify that the information was complete and accurate with the person who furnished the information.

238.   Defendant did not promptly notify Plaintiffs of the reinsertion in writing, including (1) a statement that the disputed information has been reinserted; (2) the name, address, and telephone number of any furnisher of information contacted or that contacted Defendant in connection with the reinsertion; and (3) a notice that Plaintiffs had the right to a reinvestigation of the reinserted information and to add a statement to their files disputing the accuracy of the information.

239.   Defendant knew or should have known about its obligations under the ICRAA.  These obligations are well established in the plain language of the ICRAA and in well-established case law.

240.   Defendant obtained or had available substantial written materials that apprised it of its duties under the ICRAA.

241.  Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs of their rights under the ICRAA.

242.  Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs of their rights under the ICRAA.

243.  Defendant's violation of Cal. Civ. Code § 1786.20 was negligent, grossly negligent, and/or willful, entitling Plaintiffs to recover under Cal. Civ. Code § 1786.50.

244.  As a result of this conduct by Defendant, Plaintiffs suffered actual damages including without limitation, by example only and as described herein on their behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## **JURY TRIAL DEMAND**

245.  Plaintiffs demand trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Classes respectfully pray that relief be granted as follows:

A.  An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedures 23 and appointing Plaintiffs and the undersigned counsel of record to represent same;

B.  Issuing proper notice to the Putative Classes at the Defendant's expense;

C.  An award of actual, statutory and punitive damages for Plaintiffs and the Classes;

D.  An award of reasonable attorneys' fees and costs;

1    E.    An award of pre-judgment and post-judgment interest as provided by
2          law;
3    F.    Granting other further relief, in law or equity, as this Court may deem
4          appropriate and just.

5

6                                              Respectfully Submitted,

7                                              TATAR LAW FIRM, APC

8
                                        BY:    /s/Stephanie R. Tatar
9                                              Stephanie Tatar
10                                             Attorney for Plaintiffs

11   DATE: June 28, 2017